**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| CHRISTINA MARIE BURNS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO. 2:16-CV-513-JEM |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff on December 12, 2016, and on Plaintiff's Brief [DE 9], filed by Plaintiff on May 30, 2017. The Commissioner filed a response to Plaintiff's brief on September 6, 2017. Plaintiff filed no reply, and the time to do so has passed.

**I.     Procedural Background**

In June 2013, Plaintiff applied for disability insurance benefits with the United States Social Security Administration ("SSA"), alleging that she had become disabled as of December 21, 2012. Plaintiff's claim was denied initially and on reconsideration. On April 28, 2015, Administrative Law Judge ("ALJ") Michael Carr held a hearing at which Plaintiff, represented by counsel, and a vocational expert ("VE") testified. On July 9, 2015, the ALJ issued a decision denying Plaintiff benefits on the ground that Plaintiff was not disabled.

In the opinion, the ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2015.

2. The claimant had not engaged in substantial gainful activity since December 21, 2012, the alleged onset date.

3. The claimant had the following severe impairments: fibromyalgia; mild

degenerative changes of the thoracic spine; arthritic changes in the facet joints at L3-L4, L4-L5, and L5-S1; arthritis of the hips; and ankylosing spondylitis.

4. The claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant had the residual functional capacity ("RFC") to perform light work, lifting or carrying up to 20 pounds occasionally and 10 pounds frequently and standing or walking for up to six hours in a work day; and she could frequently climb stairs, ramps, ladders, ropes, or scaffolds and frequently balance, stoop, kneel, crouch or crawl.

6. The claimant was capable of performing her past relevant work as an office manager.

7. In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant could perform.

8. The claimant was not under a disability, as defined in the Social Security Act, from January 14, 2012, through the date of the ALJ's decision.

On October 12, 2016, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. On December 12, 2016, Plaintiff filed the underlying Complaint seeking reversal of the adverse SSA determination.

The parties consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the SSA and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse

only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "A reversal and remand may be required, however, if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful

review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III. Analysis

Plaintiff argues that the ALJ (1) erred in his finding that Plaintiff did not have any severe mental impairment, (2) erroneously discounted the opinions of Plaintiff's treating physicians, and (3) performed a flawed credibility analysis, and that these errors resulted in a faulty RFC finding that mandates remand.

### A. Medical Opinions

Plaintiff contends that the ALJ failed to give proper weight to the medical findings made by her treating physicians, psychiatrist Dr. Candice Hunter and rheumatologist Dr. Vinay Reddy. Both doctors opined that Plaintiff has or would likely have significant work-related limitations. The Commissioner argues that the ALJ's decision to discredit the treating physicians' testimony was proper and supported by the evidence.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Being "not inconsistent" does not require that the opinion be supported directly by all of the other evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the

4

opinion." S.S.R. 96–2p, 1996 WL 374188, at *3 (July 2, 1996). To be "substantial," conflicting evidence "need only be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Schmidt v. Barnhart*, 395 F.3d at 744. Where an ALJ declines ALJ failed to give controlling weight to an opinion proffered by a treating physician, he is still required to analyze the following factors to describe what weight to give it: the length, nature, and extent of the physician'streatment relationship with the claimant; whether the physician's opinions were sufficientlysupported; how consistent the opinion is with the record as a whole; whether the physicianspecializes in the medical conditions at issue; and other factors, such as the amount of understandingof the disability programs and their evidentiary requirements or the extent to which an acceptablemedical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision.").

Plaintiff first criticizes the ALJ's rejection of the opinions of her treating psychiatrist Dr. Hunter, who, after treating Plaintiff for nearly two years, wrote an opinion which noted her diagnoses of anxiety disorder and depressive disorder, identified her signs and symptoms, and opined that Plaintiff had several work-related limitations. AR 1087-1092. She wrote that Plaintiff had "moderate-to-marked" limitations, defined as symptoms intefering for one-third to two-thirds of the work day, in the abilities to understand and remember detailed instructions; maintain attention and concentration for extended periods; complete a workday without interrputions from psychological symptoms; and perform at a consistent pace without rest periods of unreasonable length or frequency. She also opined that Plaintiff had a "moderate" limitation, defined as symptoms

5

interfering for up to one-third of a workday, in her ability to work in coordination with or near others without being distracted by them. She explained that Plaintiff has panic attacks, that her medications can lead to fatigue, and that Plaintiff would likely be absent from work two to three times per month due to her impairments or treatment. The ALJ gave "no controlling weight or even great weight" to Dr. Hunter's opinions because he found them "inconsent with the overall evidence of record regarding the claimant's mental impairments, including Dr. Hunter's own records that indicate that the claimant is doing well on her medications and that she denies significant symptoms of depression or anxiety." While it is true that two of the treatment notes indicate that Plaintiff was doing better on her medication regimen, that is certainly not the complete view of Dr. Hunter's records of treating Plaintiff, who often displayed a down mood, a blunted or tearful affect, or tiredness during their meetings. The ALJ may not cherry-pick mental health evidence of better days in order to discount the physician opinions in the record. *See*, *e.g., Punzio*, 630 F.3d at 710 ("[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition."). Indeed, "symptoms that 'wax and wane' are not inconsistent with a diagnosis of recurrent, major depression. 'A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days.'" *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)). In addition, even if the ALJ elects to give less than controlling weight to the psychiatrist's opinion, he must analyze the regulatory factors, including the length and extent of their treatment relationship, in deciding how much to weigh it; this the ALJ did not do.

The ALJ also rejected the opinions of Plaintiff's treating rheumatologist, Dr. Vinay Reddy,

who treated Plaintiff from 2011 through 2015 for her immune disorders, including fibromyalgia and ankylosing spondylitis, a type of arthritis of the spine. In May 2015, Dr. Reddy opined that Plaintiff could work in a seated position for up to two hours per day, in 20-30 minute increments, and could work in a standing position for up to two hours per day, in 10-15 minute increments. AR 1037-1038. He also opined that her pain would frequently interfere with her attention and concentration. In September 2015, Dr. Reddy wrote a narrative letter indicating that he had been treating Plaintiff's ailments since October 30, 2007. AR 1134. He described her syptoms in detail then opined that she would be limited to 2 hours standing/walking and 2 hours of sitting in a workday, with a lift/carry restriction of 5 pounds, that she could rarely manimulate fine objects with her hands, and that she would need toget up and move around every 20 to 30 minutes. Dr. Reddy also indicated that Plaintiff's symptoms would "likely increase" in a competive work enviornment, would "intefere with her attention and concentration," and would cause her to be absent from work more than three times per month. He stated that it was his professional opinion that Plaintiff was disabled and could not sustain full-time competitive employment.

Although the ALJ acknowledged Plaintiff's "history of widespread pain throughout her back, neck, and hips" and recognized Dr. Reddy as her "longtime treating rheumatologist," he gave "little weight" to Dr. Reddy's opinions. The ALJ's entire explanation for rejecting Dr. Reddy's opinions was that they were "not consistent with the overal medical records, including Dr. Reddy's own records, which indicate that the claimant's conditions have been relatively stable and have had some improvement with medications and the TENS unit." The ALJ did not further indicate which portions of the opinion contradicted medical records, and he did not explain how he accounted for Dr. Reddy's many treatment notes indicating that Plaintiff was experiencing pain, tenderness, and

7

stiffness. Nor did he account for the fact that Dr. Reddy, a trained rheumatologist, felt it was necessary to continue to treat Plaintiff's with injections of Humira, a biologic drug with quite serious potential side effects side effects, despite the ALJ's finding that she was "relatively stable" with "some improvement." In sum, the ALJ appears to have placed a heavy reliance on a slight improvement in Plaintiff's condition to discount her own doctor's opinion about her long-term conditions and outlook. The Administration's own guidelines recognize that, with fibromyaligia in particular, pain "may fluctuate in intensity and may not always be present." SSR 12-2p, 2012 WL 3104869 at *2 (July 25, 2012). Additionally, the Seventh Circuit Court of Appeals has warned ALJs against cherry-picking evidence in the record to find improvement. "An ALJ cannot rely only on the evidence that supports her opinion." *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (quoting *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)); *see also Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ identified pieces of evidence in the record that supported her conclusion that [the plaintiff] was not disabled, but she ignored related evidence that undermined her conclusion. This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

The ALJ's treatment of other medical evidence suffers similar flaws. For example, while the ALJ did make note of Plaintiff's two visits to the emergency room in July and November 2013 and did acknowledge that she was diagnosed with "myalgias, back pain, and arthralgias" (all terms for types of pain), he concluded that the emergency room doctors' notations of normal gait and strength and mild X-ray findings "did not support the claimant's allegations of extreme pain." Yet the doctors

who treated Plaintiff believed her pain was severe enough to prescribe a Fentanyl patch and a Medrol Dosepak, two strong forms of pain relief, in addition to the pain medications and muscle relaxers she was already taking. Again, the ALJ substituted his own judgment for that of trained medical professionals. *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *see also Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

The ALJ's rejection of Dr. Reddy's opinions and Plaintiff's testimony leaves the evidentiary basis of his RFC unclear. The ALJ also gave "little weight" to the opinions of two state agency medical consultants who reviewed some of Plaintiff's records and determined that she was capable of work at the medium exertion level. Although medical evidence "may be discounted if it internally inconsistent or inconsistent with other evidence," *Knight v. Chater,* 55 F. 3d 309, 314 (7th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)), the ALJ here failed to provide the requisite "logical bridge" from the evidence to his conclusions, because he discounted or ignored medical evidence that ran contrary to his conclusion and failed to identify any medical source to whom he gave more than "light weight" in determining Plaintiff's physical capacities.

On remand, the ALJ is instructed to throughly analyze the medical evidence and to reconsider the weight afforded to the opinion of Plaintiff's treating physicians, Dr. Reddy and Dr. Hunter.

### IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the request contained in Plaintiff's Opening Brief in a Social Security Matter [DE 16], **REVERSES** the Administrative Law Judge's decision, and **REMANDS** this matter to the Commissioner for further proceedings consistent with

this Opinion.

    So ORDERED this 13th day of March, 2018.

                                           s/ John E. Martin
                                           MAGISTRATE JUDGE JOHN E. MARTIN
                                           UNITED STATES DISTRICT COURT

cc:     All counsel of record